UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNETH NESMITH,

    Plaintiff,

v.                                              Case No: 2:16-cv-675-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Kenneth Nesmith's Complaint (Doc. 1) filed on September 2, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

    A.    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.[1] The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

    **B.**    **Procedural History**

On October 12, 2012, Plaintiff filed an application for supplemental security income benefits asserting an onset date of September 15, 2011. (Tr. at 239). Plaintiff's application was denied initially on November 28, 2012 and upon reconsideration on January 14, 2013. (Tr. at 97, 110). An Administrative Law Judge ("ALJ"), Joseph L. Brinkley, conducted a video hearing on February 24, 2015. (Tr. at 49-85). ALJ Brinkley issued an unfavorable decision on March 27, 2015. (Tr. at 9-30). The ALJ found Plaintiff had not been under a disability since October 12, 2012, the date Plaintiff's application was filed. (Tr. at 25).

On July 20, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6). Plaintiff filed a Complaint (Doc. 1) in this Court on September 2, 2016. Defendant filed an Answer (Doc. 15) on January 11, 2017. The parties filed memoranda in support. (Docs. 19-20). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 22). This case is ripe for review.

---

[1] The Court notes that the Social Security regulations were recently revised. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Unless otherwise specified, the Court refers to the regulations in effect at the time of the Administrative Law Judge's decision.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 12, 2012, the application date. (Tr. at 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "bipolar disorder, antisocial personality disorder, borderline intellectual functioning, and polysubstance dependence." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (Tr. at 15). The ALJ specifically considered Listings 12.04, 12.05, 12.06, 12.08 and 12.09. (*Id.*).

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Based on the evidence, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels" except:

> [Plaintiff] is limited to simple, routine and repetitive tasks; can understand, remember, and carry out simple work instructions; can exercise simple work-related judgment; can have occasional in person or physical interaction with coworkers and supervisors; can have frequent nonphysical and non- in- person contact with coworkers and supervisors such as the ability to use or communicate by telephone, computer and other social media outlets; can [sic] no interaction with the general public; there must be little changes in the work structure; is limited to the kinds of low stress occupations that do not require high volume production quotas or fast paced assembly lines; and is limited to occasional work in teams and in tandem.

(Tr. at 18).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 23).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 24). Specifically, the ALJ noted the vocational expert's ("VE") testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as:

> 1. Mold Stripper (DOT 556.686-018), which is medium, unskilled work with a specific vocational preparation (SVP) of two, and of which there are 434,700 jobs in the nation, and 2,300 jobs in the State of Florida; and
>
> 2. Recycler (DOT 928.687-022), which is medium, unskilled work with an SVP of two, and of which there are 149,000 jobs in the nation, and 680 jobs in the State of Florida.

(Tr. at 24).[3]

Of note, however, the ALJ found that the VE's testimony was inconsistent with the information contained in the DOT. (*Id.*). Nonetheless, the ALJ found that there was a

---

[3] "DOT" is an acronym for *Dictionary of Occupational Titles*.

reasonable explanation for the discrepancy. (*Id.*). Specifically, the ALJ found that, pursuant to Social Security Ruling ("SSR") 00-4p, the VE's testimony was consistent with the DOT "with the exception of superficial contact with the public and low stress work, which the expert noted is not addressed in the DOT." (*Id.*). Additionally, the ALJ noted that the VE's testimony was based on her experience in the field. (Tr. at 24-25). As a result, the ALJ found that the VE's explanation was reasonable even though it was inconsistent with the DOT. (*See* Tr. at 25). In total, the ALJ found the VE's testimony "to be persuasive" regarding the jobs that can be performed by someone with Plaintiff's RFC. (*Id.*). As a final matter, the ALJ found that the hypothetical limitations posed by Plaintiff's counsel at the hearing were not supported by the record. (*Id.*). In sum, the ALJ determined that a finding of "not disabled" was appropriate. (*Id.*).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability since October 12, 2012, the date Plaintiff's application was filed. (*Id.*).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) The ALJ's finding at Step Three of the sequential evaluation process that Plaintiff does not meet the requirements of Medical Listing 12.05 is not supported by substantial evidence.

(2) The ALJ committed reversible error by assigning little weight to the opinion of Department of Vocational Rehabilitation Examiner Dr. Noble Harrison, Ph.D.

(3) The credibility assessment and consideration of the "paragraph B" criteria of the Medical Listings are not supported by substantial evidence because the ALJ failed to consider the inherently episodic nature of Plaintiff's mental impairments and the course of treatment.

(Doc. 19 at 2). The Court addresses these issues in turn below.

### A. The ALJ's Analysis at Step Three

Plaintiff contends that the ALJ erred at step three. (Doc. 19 at 8-12). Plaintiff argues that the ALJ's finding that Plaintiff does not meet the requirements of paragraphs B or C of Listing 12.05 is not supported by substantial evidence. (*Id.*).

In evaluating this issue, the Court notes that, at step three, to meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the

criteria in the listing." 20 C.F.R. § 416.925(d). The burden is on a plaintiff to show that he or she meets the listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a listing, a plaintiff must have a diagnosis included in the listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).

In this case, Plaintiff contests the ALJ's consideration of Listing 12.05. In pertinent part, Listing 12.05 states:

> *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. [omitted];
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. [omitted].

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

Additionally, the introductory material to the mental disorders listings states:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

Based on the foregoing, "[t]o qualify under Listing 12.05, [a claimant] must first meet the diagnostic criteria in 12.05's introductory paragraph: he must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22.'" *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). "In addition, [a claimant] must meet the specific severity requirements in one of the subparagraphs, A through D." *Id.*

In this case, Plaintiff argues that the ALJ erred by not finding that Plaintiff meets paragraphs B or C of Listing 12.05. (Doc. 19 at 8-12). As to paragraph B, Plaintiff specifically argues that the ALJ incorrectly found that he did not satisfy the criteria because he did not have a "valid verbal, performance, or full scale IQ of 59 or less." (*Id.* at 10 (citing Tr. 17)). To rebut this finding, Plaintiff points to his verbal IQ score of 58 from an evaluation performed by Dr. Noble Harrison. (*Id.* (citing Tr. at 694)). Plaintiff argues that the ALJ's "failure to consider or misinterpretation of the diagnostic testing casts doubt on the remainder of his analysis." (*Id.*).

Plaintiff further argues that the ALJ erred in finding that Plaintiff "did not demonstrate deficits in adaptive functioning initially manifested before age 22." (*Id.* at 11). Specifically, Plaintiff contends that, in the Eleventh Circuit, there is a "presumption that intellectual disability is a condition that remains constant throughout life." (*Id.* (citing *Hodges v. Barnhart*, 276 F.3d

8

1265, 1266 (11th Cir. 2001)). Plaintiff argues that "the ALJ here failed to recognize the presumption that the Plaintiff had met his burden of establishing an impairment under Listings 12.05B or 12.05C." (*Id.*). Additionally, Plaintiff argues that "the basic and mundane tasks listed by the ALJ do not support the finding that Plaintiff does not have sufficient deficits in adaptive functioning." (*Id.*).

In response, Defendant acknowledges that the ALJ erred by failing to recognize Plaintiff's verbal IQ score of 58. (Doc. 20 at 7 n.4). Nonetheless, Defendant argues that the error was harmless because "the ALJ properly found Plaintiff did not meet the introductory paragraph to Listing 12.05." (*Id.*). Specifically, Defendant argues that "[t]he ALJ properly found that Plaintiff's activities did not indicate that he had deficits in adaptive functioning." (*Id.* at 8). Defendant points to the ALJ's finding that "Plaintiff was able to read and write, count change, pay bills, use a checkbook, handle a savings account, prepare meals, clean, sweep, and vacuum." (*Id.* (citing Tr. at 18)). Defendant also notes the ALJ's finding that Plaintiff "left the house often by himself and was able to use public transportation to get around independently." (*Id.* (citing Tr. at 18)). Defendant argues that these activities are inconsistent with a deficit in adaptive functioning. (*Id.* at 8-9 (citing *O'Neal*, 614 F. App'x at 459-60)).

In reviewing this issue, as an initial matter, it is clear that the ALJ erred in failing to acknowledge Plaintiff's qualifying verbal IQ score of 58 under paragraph B of Listing 12.05. Indeed, the record clearly indicates that Plaintiff received such a score. (Tr. at 694). Nonetheless, to qualify for any listing, a plaintiff must "have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. § 416.925(d) (emphasis added); *see also Wilson*, 284 F.3d at 1224. Here, however, substantial evidence supports the ALJ's finding that "the evidence of record does not demonstrate deficits in adaptive functioning

9

initially manifested before the age of 22." (*See* Tr. at 18). Because substantial evidence supports a finding that Plaintiff has not satisfied all of the criteria in the listing, the ALJ's error is harmless. *See* 20 C.F.R. § 416.925(d).

In coming to this conclusion, the Court looks to the Eleventh Circuit's decision in *O'Neal v. Commissioner of Social Security*, 614 F. App'x at 459. In *O'Neal*, the Eleventh Circuit affirmed the Commissioner's decision, finding that substantial evidence supported the ALJ's decision. *Id.* at 460. The court expressly acknowledged its prior holding in *Hodges v. Barnhart* that, when a claimant has a qualifying IQ score under Listing 12.05, a rebuttable presumption is created that the claimant "manifested deficits in adaptive functioning before age 22." *Id.* at 459 (citing *Hodges*, 276 F.3d at 1269). Despite acknowledging the existence of this presumption, however, the Court noted that "the Commissioner may present evidence relating to a claimant's daily life to rebut this presumption." *Id.* (citing *Hodges*, 276 F.3d at 1269). In *O'Neal*, the court found that the Commissioner had rebutted the presumption. *See id.* at 460.

Specifically, the record evidence in *O'Neal* showed that the claimant "held a job as a dishwasher for many years without receiving any special accommodation or training" and that he had "quit his job only for family reasons." *Id.* at 459-60. The court further noted that the claimant had "worked occasionally as a handy man, helping with carpet and trim work and installing siding" and that he helped at home with light yard work, looked after his two children, independently performed all activities of personal care and daily living, and attended church on Sundays. *Id.* at 460. The court further noted that the claimant held a driver's license and drove locally three times per week. *Id.* The court found that these facts supported "the ALJ's implicit conclusion that, despite his low I.Q. score, [the claimant] does not have sufficient adaptive functioning deficits to meet the requirements of the diagnostic description in Listing 12.05." *Id.*

The court stated that, "[w]hile there may be other record evidence to support [the claimant's] arguments, there is substantial evidence to support the ALJ's decision." *Id.* Thus, the court affirmed. *Id.*

In this case, because Plaintiff has a qualifying IQ score under Listing 12.05, there is a rebuttable presumption that Plaintiff "manifested deficits in adaptive functioning before age 22." *See id.* at 459. Nonetheless, the Court finds that the ALJ rebutted this presumption by citing substantial evidence of record. For instance, the ALJ cited record evidence showing that Plaintiff is able to read and write, count change, pay bills, use a checkbook, handle a savings account, prepare meals, clean, sweep, and vacuum. (Tr. at 18 (citing Tr. at 291-94)). Similarly, the ALJ noted that Plaintiff could go out alone and use public transportation, and he had worked in the past. (*Id.* (citing Tr. at 293)). These activities are analogous to the activities in *O'Neal* that served to rebut the presumption. *See* 614 F. App'x at 460. In this case, as in *O'Neal*, while there may be other record evidence to support Plaintiff's arguments, there is nonetheless substantial evidence to support the ALJ's finding that Plaintiff had not demonstrated deficits in adaptive functioning initially manifesting before the age of 22. (*See* Tr. at 18). Specifically, substantial evidence of record supports the ALJ's finding that Plaintiff does not have sufficient adaptive functioning deficits to meet the requirements of Listing 12.05. (*See id.*).

Because Plaintiff cannot meet the diagnostic criteria in Listing 12.05's introductory paragraph, it does not matter that Plaintiff can satisfy the requirements of paragraphs B and C of Listing 12.05. *See O'Neal*, 614 F. App'x at 459. Indeed, because Plaintiff only manifests some of the criteria, Plaintiff does not meet the qualifications for Listing 12.05, no matter how severe his impairments may be. *See Zebley*, 493 U.S. at 530. Accordingly, like *O'Neal*, the Court finds

that the ALJ's determination that Plaintiff did not meet Listing 12.05 is supported by substantial evidence. *See id.* The Court affirms on this issue.

### B. The ALJ's Review of Dr. Noble Harrison's Medical Opinion

The Court next addresses the ALJ's review of Dr. Harrison's medical opinion.

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2). When evaluating a medical opinion, the ALJ considers various factors, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider *every* medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct

application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Here, Plaintiff argues that the ALJ's reasons for discounting Dr. Harrison's opinion are not supported by substantial evidence.  (Doc. 19 at 14).  Upon review of the ALJ's consideration of Dr. Harrison's opinion, however, the Court finds that the ALJ stated with particularity the weight given to Dr. Harrison's opinion and the reasons therefor.  *Winschel*, 631 F.3d at 1179.  Moreover, the ALJ's reasons for giving Dr. Harrison's opinion little weight are supported by substantial evidence of record.

Specifically, the ALJ afforded "little weight" to Dr. Harrison's opinion for three stated reasons:  (1) "Dr. Harrison's opinions go to an issue that is reserved for the Commissioner;" (2) Dr. Harrison's assessments were vague and did not provide for specific workplace limitations; and (3) Dr. Harrison's assessments were inconsistent with the overall medical evidence of record.  (Tr. at 23).  Upon consideration of the record, the Court finds that the ALJ's stated reasons are supported by substantial evidence of record.

First, the ALJ was not wrong to discount Dr. Harrison's opinion on the basis that Dr. Harrison gave opinions on issues reserved to the Commissioner. Indeed, under the regulations, opinions that a claimant is disabled are not medical opinions but, instead, are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 416.927(d)(1). Under the regulations, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [a claimant is] disabled." *Id.* Here, although Dr. Harrison opined that she did not think that Plaintiff was "emotionally stable enough now for employability," (Tr. at 327, 696), the ALJ was under no obligation to credit this opinion because it goes to an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(1). Thus, the ALJ was not wrong to discount Dr. Harrison's opinion on this basis.

Second, substantial evidence supports the ALJ's finding that Dr. Harrison's assessments were vague because they did not provide for specific workplace limitations. (*See* Tr. at 23). Specifically, a review of Dr. Harrison's opinions shows that Dr. Harrison did not state any specific limitations Plaintiff may have. (*See* Tr. at 696). Instead, Dr. Harrison only indicated that Plaintiff "is emotionally, mentally, and intellectually too disabled to carry on gainful employment." (*Id.*). As stated above, the ALJ was under no obligation to give significant weight to this opinion because it goes to an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(1). Moreover, in the absence of any specific limitations opined by Dr. Harrison, the Court cannot find that the ALJ erred in concluding that Dr. Harrison's opinion was vague on this basis. (*See* Tr. at 23).

Finally, substantial evidence of record supports the ALJ's conclusion that Dr. Harrison's assessments were inconsistent with the overall medical evidence of record. (*See id.*).

Specifically, although Dr. Harrison opined that Plaintiff "is emotionally, mentally, and intellectually too disabled to carry on gainful employment," (Tr. at 696), the ALJ cited contrary evidence of record showing that Plaintiff was "alert and oriented, with a logical and goal directed thought process and intact memory" and also "was often cooperative, with good eye contact, normal speech and an appropriate affect." (Tr. at 23 (citing Tr. at 360-61, 415, 422, 432, 503, 515, 590, 627-29, 678, 704, 730)). As indicated above, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at, 1358. Here, reasonable minds can differ when reviewing the underlying evidence. Nonetheless, because the ALJ's conclusions are supported by substantial evidence of record, the ALJ did not err in discounting Dr. Harrison's opinion on this basis.

In sum, the ALJ stated with particularity the weight given to Dr. Harrison's opinions and the reasons therefor. *See Winschel*, 631 F.3d at 1179. Moreover, the ALJ's reasons for giving Dr. Harrison's opinion little weight are supported by substantial evidence of record. The Court, therefore, affirms on this issue.

### C. The ALJ's Review of the Paragraph B Criteria

Finally, Plaintiff argues that the ALJ did not properly evaluate the "paragraph B" criteria of the Medical Listings because he failed to consider the inherently episodic nature of Plaintiff's mental impairments and the course of treatment. (Doc. 19 at 16).

The 12.00 Listings – with the exception of 12.05 and 12.09 – consist of (1) "a statement describing the disorders addressed by the Listing;" (2) "paragraph A criteria, which are a set of necessary medical findings;" and (3) "paragraph B criteria, which list impairment-related functional limitations that are incompatible with the claimant's ability to do any gainful activity."

15

*Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 923 (11th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.02, 12.03, 12.04, 12.06, 12.07, 12.08). In Listing 12.05, the paragraph B criteria is instead part of paragraph D. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the "paragraph B" criteria, a Plaintiff must have at least two (2) of the following: "marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." *Id.* at 924 (citations omitted). "'Marked' means 'more than moderate but less than extreme;' marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function 'independently, appropriately, effectively, and on a sustained basis.'" *Id.* The definition for episodes of decompensation is as follows:

> "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). To meet the criterion of "repeated" episodes of "extended duration," a claimant must have three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.*

*Id.*

Plaintiff argues that the ALJ erred because his "mental impairments are expected to fluctuate over time." (Doc. 19 at 16). Plaintiff argues that instead of "recognizing this natural level of fluctuation and making a reasonable determination regarding Plaintiff's likely work restrictions over the long-term, the ALJ minimized Plaintiff's impairments selectively focusing on the examination findings that support his conclusions to the exclusion of the substantial evidence of record." (*Id.*). Plaintiff argues that the ALJ's "finding that Plaintiff only has

moderate limitations at step three and the corresponding social restrictions in the RFC assessment do not adequately account for his social limitations." (*Id.* at 17 (citing Tr. at 18)). As a result, Plaintiff contends that "the hypothetical question posed to the vocational expert and the ALJ's adoption of the vocational expert testimony at step five, finding that Plaintiff can perform other work, are not supported by substantial evidence, as they do not count for all limitations arising from Plaintiff's impairments." (*Id.*). Plaintiff further argues that "the ALJ's findings with respect to concentration, persistence, and pace do not adequately account for Plaintiff's mental impairments and are not supported by substantial evidence." (*Id.* at 17-18).

The Court finds that the ALJ's paragraph B findings are supported by substantial evidence of record.

First, substantial evidence supports the ALJ finding that Plaintiff had only mild restriction for activities of daily living. (Tr. at 16). Specifically, the ALJ noted record evidence showing that Plaintiff has no problem with personal care, can prepare meals, clean, sweep, and vacuum. (Tr. at 16 (citing Tr. at 292)). The ALJ also noted that Plaintiff "goes outside often alone, and uses public transportation or rides his bicycle." (*Id.* (citing Tr. at 293)). The ALJ further cited Plaintiff's ability to read, write, water plants, and watch television. (*Id.* (citing Tr. at 291, 294)). Finally, the ALJ cited the fact that Plaintiff's treating providers had not noted any abnormalities in Plaintiff's ability to perform activities of daily living. (*Id.*). The Court finds that these citations to the record provide substantial evidence in support of the ALJ's finding that Plaintiff only has mild restrictions as to activities of daily living.

Second, substantial evidence supports the ALJ's finding that Plaintiff has "moderate" difficulties related to social functioning. (*See id.*). In coming to this conclusion, contrary to Plaintiff's assertion that the ALJ failed to consider that Plaintiff's mental impairments are

expected to fluctuate over time, (Doc. 19 at 16), it is clear that the ALJ expressly noted that, at times, Plaintiff exhibited depressed mood, constricted affect, reported hallucinations, had inappropriate behavior, and was anxious and agitated and that, at other times, Plaintiff had appropriate affect, normal speech, was pleasant and calm, and had good eye contact. (Tr. at 16).

Indeed, the ALJ expressly acknowledged that Plaintiff reported "hear[ing] voices telling him to act out violently towards others, think[ing] people are out to get him, and ha[ving] anxiety attacks." (*Id.* (citing Tr. at 290)). Additionally, the ALJ noted that Plaintiff "has trouble getting along with others as he gets into arguments and loses his temper" and "does not spend time with others." (*Id.* (citing Tr. at 294-95)). Nonetheless, the ALJ stated that Plaintiff "often goes outside alone and uses public transportation." (*Id.* (citing Tr. at 293)) Additionally, although Plaintiff "frequently had a depressed mood, constricted affect and reported hallucinations," (*id.* (citing Tr. at 360-61, 389, 415, 514-15, 518-19, 693)), and, on other occasions, had inappropriate behavior and was anxious and agitated, (*id.* (citing Tr. at 415, 627, 698, 723)), the ALJ nonetheless noted that, at other times, Plaintiff "presented with an appropriate affect, normal speech, and was pleasant and calm with good eye contact," (*id.* (citing (Tr. at 361, 422, 432, 503, 515, 519, 590, 629, 678, 704)).

From this, the ALJ's implicit conclusion is that Plaintiff's mental impairments fluctuated over time. (*See* Tr. at 16). Thus, the Court cannot find that the ALJ failed to consider this point. Moreover, when considering the Plaintiff's mental impairments overall, the Court cannot find that the ALJ erred in finding that Plaintiff had only "moderate" difficulties. Upon review, the ALJ's finding that Plaintiff only had "moderate" difficulties in maintaining social functioning due to his mental health symptoms is supported by substantial evidence. (*Id.*).

Third, substantial evidence supports the ALJ's finding that Plaintiff has only "moderate" difficulties with regard to concentration, persistence or pace. (*Id.*). Specifically, while the ALJ noted Plaintiff's "short-term memory loss, and trouble with concentration," (*id.* (citing Tr. at 290, 295)), the ALJ also noted that Plaintiff "could pay bills, count change, handle a savings account and use a checkbook (*id.* (citing Tr. at 293)). Similarly, the ALJ also noted that Plaintiff "watches television, writes and reads." (*Id.* (citing Tr. at 291, 294)). While Plaintiff, on occasion, appeared distracted with some difficulty recalling remote details and racing thoughts, (*id.* (citing Tr. at 432, 689, 722-23)), Plaintiff was also noted to have had "normal psychomotor behavior, intact memory, and was alert and oriented with a logical and goal directed thought process," (*id.* (citing Tr. at 360-62, 415, 422, 503, 515, 518-19, 529, 609, 730)). The ALJ further noted that Plaintiff "attended the hearing and answered questions appropriately, and there was no evidence of apparent difficulties understanding and attending to the content of the hearing." (*Id.*). As above, the Court finds that these citations to the record provide substantial evidence in support of the ALJ's finding that Plaintiff has only "moderate" difficulties maintaining concentration, persistence and/or pace, due to his mental health symptoms. (*See id.*).

Finally, as to episodes of decompensation, the ALJ found that, while Plaintiff had been hospitalized in October 2014, it had not been for an extended duration. (*Id.* (citing Tr. at 700)). The ALJ found, therefore, that Plaintiff had not experienced episodes of decompensation, which have been of extended duration. (*Id.*). This point was not challenged by Plaintiff. (*See* Doc. 19 at 15-18). Thus, the Court finds that the record provides substantial evidence in support of the ALJ's finding.

In sum, although Plaintiff disagrees with the ALJ's findings regarding the paragraph B criteria, for the reasons discussed above, the ALJ's findings are supported by substantial

evidence. Because the ALJ's findings are supported by substantial evidence, the Court has no basis to conclude that the ALJ erred in his reasoning in other parts of his decision—including his RFC assessment or his finding at step five that that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Instead, it appears that the ALJ expressly accounted for Plaintiff's mental impairments in the RFC and in evaluating the jobs Plaintiff can perform. (*See* Tr. at 18-25). Accordingly, the ALJ's findings are supported by substantial evidence of record. Thus, the Court affirms on this issue.

**III.     Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 6, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties